**MOTOR VEHICLE LICENSING BOARD, State of Colorado, Appellee,**

v.

**DENVER TRUCK CENTER, INC., a Colorado corporation and Steven J. Dreiling, Respondents–Appellants.**

No. 93CA1575.

Colorado Court of Appeals, Div. II.

April 21, 1994.

Rehearing Denied June 2, 1994.

Certiorari Denied Dec. 19, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., James F. Clark, Asst. Atty. Gen., Denver, for appellee.

Miller & Steiert, P.C., Martin P. Miller, Stephen M. Whitmore, Littleton, for respondents-appellants.

Opinion by Judge METZGER.

Respondents, Denver Truck Center, Inc., (DTC) and Steven J. Dreiling, appeal the order of the Colorado Motor Vehicle Dealer Board (the Board) which suspended both

DTC's used motor vehicle dealer license and Dreiling's no-fee salesperson license. We affirm.

In November 1989, David Simon, an automobile dealer in California, ordered automobile parts from DTC. He sent a check for $4,786.68 as payment but, even after repeated inquiries, over a period of almost two years, the respondents did not ship the parts or return the money.

In July 1991, Simon complained to the Board about the situation. Respondents advised the Board's investigator that they had no knowledge of the order and that, if the parts had been ordered, they had been shipped. However, these representations proved to be false.

In September 1991, the Board contacted the respondents, urged that they correct the problem, and noted the possible consequences of a failure to do so. Respondents first mailed to the Board a check payable to both the Board and Simon. Then, they mailed a second check to the Board, payable to Simon only. Each check contained a restrictive endorsement purporting to release respondents from "any claims" of both Simon and the Board. Accordingly, the Board refused to endorse the checks and gave respondents additional time to settle the matter with Simon. Respondents did nothing further.

A notice of charges was filed with the Board in January 1992. After a two-day hearing, respondents' licenses were suspended.

## I.

Dreiling contends that he was not given notice that his license was in jeopardy. We do not agree.

Section 12–6–108(1)(b), C.R.S. (1993 Cum. Supp.) provides:

Used motor vehicle dealer's license shall permit the licensee to engage in the business of selling or exchanging used motor vehicles only, and this form of license shall permit not more than two persons named therein who shall be owners or part owners of the business of the licensee to act as motor vehicle salespersons.

Only those persons so authorized by the licensed dealer may engage in activities for which a motor vehicle sales license is required. If a salesperson is discharged, leaves an employer, or changes a place of employment, the dealer is required to "confiscate and forthwith return such salesperson's license to the board." Section 12–6–116(3), C.R.S. (1993 Cum.Supp.). Thus, the validity of a salesperson's license hinges on the validity of the dealer's license. Section 12–6–104(3)(g), C.R.S. (1993 Cum.Supp.).

Here, Dreiling does not dispute that he was an owner of and salesperson for DTC. His motor vehicle salesperson's license was valid only so long as the license of DTC was valid. Thus, it follows that notice to the dealer, DTC, constituted notice to Dreiling, an owner and agent.

## II.

Respondents contend that they were not given a reasonable opportunity to comply with the law before suspension of their licenses, as required by § 24–4–104(3), C.R.S. (1988 Repl.Vol. 10A). We disagree.

The Board derives its statutory authority to revoke vehicle dealer licenses from § 12–6–101, C.R.S. (1993 Cum.Supp.). Before revocation, notice must be given "in writing of facts or conduct that may warrant such action," the licensee must be afforded the "opportunity to submit written data," and the licensee must be given "a reasonable opportunity to comply with all lawful requirements." Section 24–4–104(3).

Here, Simon, filed his complaint with the Board in July 1991. Correspondence ensued between respondents' attorney and the Board's investigator regarding resolution of the complaint. Then, on September 23, 1991, the Executive Secretary for the Board sent respondents a letter which stated:

The Motor Vehicle Dealer Licensing Board has reviewed an investigation of a complaint filed against your company. According to the investigation, you sold $4,786.68 worth of parts to David Simon, AMX Connection in October, 1989, but you have failed to deliver the parts.

The Board considers this a deceptive trade practice, ... which is also a violation of the Dealer Licensing Law.

We expect you to resolve this complaint and provide proof of same to Investigator ... by October 4, 1991. Should the matter not be resolved by that date, the Board will have no choice but to hold a hearing in this matter, after which, if you are found to be in violation, [it] may result in the suspension or revocation of your used motor vehicle dealer license.

In reply, respondents' attorney sent a check for $4,786.68 to the Board. The check was made payable to both Simon and the Board and contained the following endorsement:

Endorsement and negoitation [sic] of this check by both payees constitutes payment in full and complete satisfaction of any and all claims the Colorado Dealer Licensing Board or David Simon may have against the maker or its owners, officers or directors.

The Board refused to accept the check.

On October 22, 1991, a second check was tendered to the Board, payable to Simon only. On the face of the check was written "any alteration to endorsement on reverse will render this check void." The back of the check contained an endorsement identical to the one on the first check.

The Board's Executive Secretary responded with the following letter:

On September 23, 1991, I wrote to you regarding the complaint filed by David Simon, AMX Connection.

As of October 25, you have still not resolved the complaint. The check # 2309 sent to Mr. Simon by your attorney ... on October 22 contains an endorsement which is totally unacceptable to Mr. Simon and to the Board.

First, Mr. Simon cannot speak for the Board and by endorsing the check, he would be forced to do so.

Secondly, you cannot force Mr. Simon to endorse away his rights to civil action, just because you are returning the money you owe him.

We must see evidence of payment to Mr. David Simon of the $4786 owed to him, without any restrictions whatsoever on the endorsement. Mr. Simon has demanded that the funds be wired to his account at ... Bank. Unless evidence of such payment is in our office by November 11, the matter will be set for a hearing.

Respondents did not wire the funds.

In January 1992, a six-page, single-spaced notice of charges against respondents was filed with the Board by the Attorney General, detailing specific acts and citing specific statutory sections and subsections in support of a request for discipline. Although the original hearing was scheduled for March 1992, procedural motions filed by respondents' attorney delayed the hearing on the merits until July and August 1992.

On these facts, we conclude that the Board, as required by § 24-4-104(3), gave respondents a reasonable opportunity to comply with the law before suspension of their licenses.

Respondents' other contentions are without merit.

The order is affirmed.

JONES and KAPELKE, JJ., concur.